# CHARLESTON

LOGAN v. PROVIDENT SAVINGS LIFE ASSURANCE SOCIETY OF NEW YORK.

Submitted March 7, 1905.     Decided March 21, 1905.

1. LIFE INSURANCE—*Application Part of Policy—Policy Control.*

Where a life insurance policy provides that the application for the insurance shall be a part of the policy, then the policy and the application should be construed together, and if there is a conflict between the policy and the application, the provisions of the policy should control.  (p. 387.)

2. LIFE INSURANCE—*Construction—Warranties.—Representations.*

A life insurance policy should be strictly construed against the insurer, and if it contains contradictory terms, or is so framed as to leave room for construction, rendering it doubtful whether the parties intended the answers of the assured to the questions propounded in the application to be warranties or representations, the court should lean against that construction which imposes the obligation of a warranty upon the assured, and hold the answers to be representations.  (p. 388.)

3. LIFE INSURANCE—*Rule of Practice—Burden of Proof.*

When an action is brought upon a life insurance policy, which provides that the application shall be made a part of the policy, and the declaration is filed under section 61, chapter 125, of the Code, 1899, and the defendant files a statement of defense under section 64 of said chapter, alleging that the assured made false and fraudulent answers to certain questions propounded to him in the application, and the plaintiff replies generally thereto, the burden is upon the defendant to prove the allegations of its statement of defense, by a preponderance of the evidence.  (pp. 390, 391.)

Error to Circuit Court, Wood County.

Action by Annie Logan against the Provident Savings Life Assurance Society of New York.    Judgment for plaintiff, and defendant brings error.

                                        *Affirmed*,

V. B. ARCHER and WILLIAM BEARD, for plaintiff in error.
VAN WINKLE & AMBLER, for defendant in error.

SANDERS, JUDGE:

On the 20th day of March, 1895, Arthur Logan made application to the defendant for a life insurance policy for $2,-000.00 for the benefit of the plaintiff.    Upon the filing of this application with the defendant, and the payment of the premium agreed upon, it issued to the applicant the policy, payable on the death of Arthur Logan, to his daughter, the plaintiff, and on August 29, 1901, Arthur Logan died, whereupon the plaintiff furnished the proofs of death of said Arthur Logan to the company, as required by the policy and demanded the payment thereof, which was refused by the company, and thereupon the defendant instituted her action in the circuit court of Wood county upon said policy, and filed her declaration, as provided for in section 61 of chapter 125 of the Code, and the defendant, as provided in section 64 of the same chapter, filed its statement in writing, setting up that the insured made false and fraudulent answers to questions 15, 19, 20 and 21, of part 2 of said application, which will be hereafter more particularly mentioned.    The plaintiff replied generally to the matters of defense filed by the defendant, and also filed a statement in writing in reply thereto, to which last statement of the plaintiff, the defendant filed a special reply in writing.    Upon these issues the case was tried, and the jury returned a verdict in favor of the plaintiff for the sum of $2,240.00, upon which the court rendered judgment, and this judgment is now here for review.

An important question involved in this controversy is, whether or not the answers to the questions propounded to the applicant in part two of said application should be construed as warranties or as representations.    The application consists of three parts.    The first part is denominated, "Application to the Provident Savings Life Assurance Society of New York," and propounds questions other than those

which affect the habits, health and physical condition of the applicant, and, inasmuch as there is no controversy as to any of the answers therein contained, it is unnecessary to refer to them, but in this part of the application, we find the following stipulation, which is signed by the assured:

"It is hereby further declared and warranted that all the statements and representations contained in Part I and Part II of this application or in any certificate of health hereinafter given to the Society to secure restoration or reinstatement of said Policy, by whomsoever they be written, are material, and are and shall be true, and with the stipulated premiums shall be the sole consideration of the contract with the Society if a policy be issued or renewed thereon; and that if any concealment, or fraudulent or untrue statement or representation be made, or if at any time any covenant or agreement herein made shall be violated, said Policy and insurance shall be null and void, and all payments made or accepted thereon shall be forfeited to the Society, except as provided therein."

Part 2 of said application is denominated, "Statement to the Medical Examiner," and the questions and the answers thereto, about which the defendant complains, are these:

"15. Have you now or have you ever had any of the following? Answer YES or NO AS TO EACH. If "Yes" in any case, give particulars under 18 below. Apoplexy? No. Asthma? No. Bronchitis? No. Cancer or Tumor? No. Colics? No. Diabetes? No. Disease of Brain? No. Disease of Heart? No. Disease of Kidneys? No. Disease of Bladder? No. Disease of Liver? No. Disease of Lungs? No. Disease of Skin? No. Disease of Spine? No. Disease of Spleen? No. Disease of Sexual Organs? No. Delirium Tremens? No. Dizziness or Vertigo? No. Diarrhoea (Chronic)? No. Dyspepsia? No. Epilepsy? No. Erysipelas? No. Fistula? No. Fits or Convulsions? No. General Debility? No. Hernia? No? If so will you always wear a truss? Gout? No. Gravel? No. Habitual Headache? No. Insanity? No. Insomnia? No. Jaundice? No. Neuralgias? No. Otorrhoea or Otitis? No. Palpitation? No. Paralysis? No. Physical In-

jury? No. Piles? No. Pleurisy? No. Pneumonia? No.
Rheumatism? No. Sciatica? No. Sunstroke? No. Sur-
gical Operation? No. Swelled Limbs or Face? No. Scrof-
ula? No. Syphillis? No. Typhoid Fever? No. Uncon-
sciousness? No. Varicose Veins? No. Yellow Fever?
No.

"19. Have you ever had any sickness, injury or infirmity
WHATEVER, not already named? If so, STATE THE
NUMBER OF ATTACKS, and the DATE, LOCATION and
DURATION OF EACH.. Ans. No.

"20. Give the name and residence of your usual Medical
Attendant. I don't have any regular Medical Attendant.
Don't need any. Never sick.

"21. *When* and by *what physician* were you *last* attended
and for *what complaint?* (Answer FULLY and SPECIFI-
CALLY.) Have not been sick."

And we find that part 2 of said application concludes as
follows;

"I HEREBY DECLARE that I have read and understand
all the above questions and the answers thereto, and they
are hereby made part of my application for insur-
ance by the Provident Savings Life Assurance Society of
New York; and I hereby warrant said answers, as written, to
be true, and that I am the person described above and in Part
I of this application, signed by me."

The policy and the application are to be construed together.
and if the stipulations contained in the application are not in
accord with the provisions of the policy, then the policy must
control, and we find contained in the policy these words: "In
consideration of the stipulations and agreements in the ap-
plication herefor, and also upon the next page of this policy,
all of which are hereby made parts of this contract." There-
fore, it will be seen that nowhere in the policy, the only
paper which came into the possesssion of the applicant under
the contract, is the word warranty used, but instead, the de-
fendant contented itself, in the preparation thereof, with
using the words "stipulations and agreements." It is true
the policy makes the application a part of it, and when this is
done, we find that part 2 of the application warrants the state-
ments made in the answers of the applicant, thereby making
a direct and patent conflict between the application and the

policy, and when this is so we must, under the rules laid down for the construction of contracts of this character, lean to that construction which makes the answers of the applicant repre-sentations and statements and not warranties.

In construing contracts of this class, the courts all agree that if they are of a doubtful meaning, that the construction should be placed upon them which classes them as represen-tations rather than as warranties, and also where there is a a conflict or inconsistency between the policy and the stipu-lations contained in the application therefor; that the pro-visions of the policy should control. Therefore, it will be observed that upon the face of the policy the word "war-ranty" does not appear. So, if the provisions of the appli-cation should be construed to be warranties, yet as they are inconsistent with and repugnant to the provisions of the pol-icy, they must yield, and the contract be so construed as to make the answers to the questions propounded in the appli-cation representations and not warranties. This view is fully sustained by the well considered cases of *Moulor* v. *Ameri-can Life Insurance Co.*, 111 U. S. 342; *Schwarzbach* v. *Pro-tective Union*, 25 W. Va. 622; *McClain* v. *Provident Sav-ings Life Assurance Society of New York*, 49 C. C. A. 31. In the last mentioned case, application was made to the Su-preme Court of Appeals of the United States for a writ of *certiorari*, which was denied.

Justice Harlan, in delivering the opinion of the court in the case of *Moulor* v. *American Life Insurance Co.*, says:

"The policy upon its face characterizes the statements of the insured as representations. Thus, we have one part of the contract apparently stipulating for a warranty, while another part describes the statements of the assured as representa-tions. The doubt, as to the intention of the parties, must ac-cording to the settled principles of the law of insurance, recognized in all the adjudged cases, be resolved against the party whose language it becomes necessary to interpret. The construction must, therefore, prevail which protects the insured against the obligations arising from a strict war-ranty."

The construction which we have placed upon this contract is supported by the case of *McClain* v. *Provident Savings*

*Life Assurance Society*, wherein the court construed the same contract as is involved in this case.     Judge Gray, in delivering the opinion of the court, says:     "The policy was issued after the application, and states that it was granted in consideration of the 'statements and agreements' in the written and printed application."     It is difficult to arrive at any other conclusion than that the policy has reference not to the warranty but to the fraudulent and untrue statement or the violation of the covenant or agreement mentioned in this last clause of the application.     And also Judge Gray says that part 1 and part 2 of the application must be construed together, and that, when so done, the answers should be held to be representations and not warranties.     *First National Bank of Kansas* v. *Hartford Fire Ins. Co.*, 95 U. S. 673; *Schwarzbach* v. *Protective Union*; *Moulor* v. *American Life Ins. Co.; Insurance Co.* v. *Raddin*, 120 U. S. 183; *Bradley* v. *Association*, 49 C. C. A. 253.

For the foregoing reasons we must conclude that the answers to the questions asked the applicant are representations and not warranties.

Since we hold that the answers to the questions propounded to the insured in the application are to be construed as representations, it is important to determine what effect the answers of the assured will have upon the policy if they were false, as claimed by the defendant.     In the case of *Schwarzbach* v. *Protective Union*, it is held although the policy be construed as not warranting the truth of the answers, yet if the answers made to specific questions are misrepresentations, the policy will be avoided, whether the court or jury regarded the answers as material or not, for the parties, by putting and answering the questions, regarded them as material. · But this is subject to the qualification that in order to be such a misrepresentation as will avoid the policy, it must be fraudulently false, that is, in making the answer, the assured must be guilty of actual fraud or legal fraud.     It is true that questions 19, 20 and 21, propounded to the assured, are specific questions, and call for true and specific answers, for the inquiries made ·by these questions were such as the assured within his own personal knowledge, knew, and was, therefore, compelled to know and did know if he made a false answer thereto.     Therefore, if the evidence shows

that the assured made false answers to these questions, or to either of them, they must be considered to have been fraudulently made.

The defendant and plaintiff in error contends that in an action upon an insurance policy under the form prescribed by section 61 of chapter 125 of the Code of 1899, where the defense is the failure of the assured to comply with or his violation of any clause or condition or warranty, and where the defendant files the statement required by section 64 of said chapter, specifying the clause, condition or warranty not kept or violated, then the burden of proof is upon the plaintiff, and cites the case of *Rosenthal* v. *Ins. Co.*, 46 S. E. Rep. 1061. Upon an examination of this authority, it will be found that it does not support the contention of the defendant. The court held in that case that where the statement of defense was filed as aforesaid, that the burden of proof to show compliance with the clause, condition or warranty, specifying it, if a *condition precedent to recovery*, is upon the plaintiff, but in this case, it certainly cannot be contended, with any degree of plausibility, that it was a condition precedent to recovery that the plaintiff should prove the truthfulness of his answers to the questions to which he is claimed to have made false and fraudulent answers. When the plaintiff shows the issuance of the policy, that the payments of the premiums have been regularly made up to the time of the death of the assured, and that, after the death of the assured, proof of his death had been furnished to the company as stipulated by the policy, then this makes a *prima facie* case, and if the defendant relies upon a breach of warranty or false representation to avoid said policy, and to release it from the payment thereof, it must establish its case by a preponderance of the testimony. In the case of *Rosenthal* v. *Ins. Co.*, it was one of the express conditions and warranties of the policy that it should not go into effect until the insured had made an inventory of the stock of goods, and should keep books of account, correctly detailing the purchases and sales. This is clearly a condition precedent to recovery, and where the statutory declaration is filed, and the statement of defense prescribed by section 64 of chapter 125, then of course, the burden of proof would be upon the plaintiff to prove a compliance with these conditions. For in-

stance, in the case at hand it is one of the conditions precedent to recovery that proofs of the death of the assured shall be furnished to the company.    This, is a condition precedent, and before any recovery could be had upon this policy, proof must be furnished as stipulated by its terms, of the death of the assured, or some good and legal excuse shown why it was not done.    The defendant, by its statement of defense, puts in question the answers of the defendant to question 15, and in answering this question it is necessary for the defendant to state whether or not he had ever had any of the diseases therein enumerated, about fifty in number.    This, of course, would be an absolute and utter impossibility, from the very character of the diseases enumerated in that question, for any statement that the assured would make would be purely a matter of opinion, and the insurer would be bound to know this.    The authorities are abundant to sustain the view that in a case of this kind the burden of proof is upon the defendant.    *Piedmont Ins. Co.* v. *Ewing*,  97 U. S. 371; *Chambers* v. *N. W. Ins. Co.*,  64 Minn. 495;  *Meadows* v. *Pac. Ins. Co.*, 50 Amer. St. Rep. 427.

Having determined that the burden of proof is upon the defendant to prove its statement of defense, the question now is whether or not the answers to questions 15, 19, 20 and 21, or either of them, are false in fact.    The defendant almost exclusively, if not entirely so, relies upon the testimony of Dr. Frame, and the affidavit of proof of death of Dr. Williamson, which was filed with the defendant company before the institution of this suit.    Dr. Frame, in his testimony, shows that he was the physician who filled out part 2 of the assured's application, and the same physician who filled up and signed the medical examiner's report, being part 3 of the application.    In the medical examiner's report, after having answered all the questions favorable to the assured, he was asked, "Do you unqualifiedly recommend the risk?" to which he answered, "Yes."    And again to the question, under the classification on the opposite page, "How do you consider the party?"    "Class A."    And it will be seen from his evidence and the endorsements upon the policy that class A is regarded "a good risk."    He says that he wrote class A and believed it, and from his evidence it is shown that for several years prior to the making of the ap-

plication for the insurance policy issued to him by the defendant, that Arthur Logan would call at his office for some little ailment—stomachache, indigestion, or something of that kind, and that he would give him a little something for it, and probably in the course of six months or more that he would call at his office again and say that he had a little headache or sore throat, and that he would probably give him something for that, and that he never was called to see him at his house, and never treated him at his home.

This is practically all the evidence of this witness, and in the affidavit of Dr. J. A. Williamson, above referred to, the following questions were asked, and answers given: "Since when had you been his medical adviser or attendant? Give date of *first* attendance for *any* cause." Can't give exact date. About twenty years ago. No special sickness." "For what diseases or injuries did you *ever* treat or advise him prior to that producing death? Give *dates*, duration and result of each." "I treated him for stomach trouble occasionally, but can't give dates." "Did you attend deceased during any part of his last illness and if so was it as physician in chief or as consultant?" "I attended him until last sickness as physician in chief." And he states that the remote or contributing cause of the death of the assured was tubercular disease of the lungs and bowels, and that the immediate cause of his death was tubercular consumption.

Now, this is the evidence upon which the defendant asks the jury to find that Arthur Logan fraudulently falsified in making the answers to the questions set forth in the defendant's statement of defense. Mrs. Virginia Logan testified on the trial but there was nothing in her testimony that we can see that in the slightest affects the plaintiff's case, and the same may be said of the other witnesses.

Special interrogatories were submitted to the jury, which are as follows: First: Had Arthur Logan, prior to the time of making the application on which the policy in controversy in this suit issued, ever had any sickness? Answer: We the jury find nothing serious. Second: Had Arthur Logan prior to the making of said application on which said policy issued, ever had a medical attendant? Answer: Not from the evidence. Third: Was the answer of Arthur Logan to said question No. 20 in said application, true, when

he answered: "I don't have any regular medical attendant—don't need any—never sick?" Answer: Yes. Fourth: Was the answer of Arthur Logan to question 21 which reads: "When and by what physician were you last attended and for what complaint? (Answer fully and specifically)" true when he answered: "Have not been sick?" Answer: Yes. Fifth: Had Arthur Logan prior to the time of making said application on which said policy was issued, ever been treated or attended by a physician? Answer. No. After the jury returned their verdict, the court instructed them to return to the room and return a positive answer to the first interrogatory. After they were returned twice, they answered "no."

It is certainly not within the meaning of the insurance law that the answers of the assured to the questions propounded to him in the application shall be literally true, but that, if they are substantially true, the insurer cannot thereby avoid the payment of the policy. "What is meant by the words 'true' and 'untrue' answers? In one sense that only is true which is conformable to the actual state of things. In that sense a statement is untrue which does not express things exactly as they are. But in another and broader sense the word 'true' is often used as a synonym of honest, sincere, not fraudulent." *Moulor* v. *American Life Ins. Co. supra.* Joyce on Insurance, section 1848, speaking of a question and answer practically similar to one propounded in this case, about which the defendant complains, says: "That where in addition to specifically named diseases the insured was asked whether he had sickness within ten years, to which he answered 'No,' and it was proven that within that period he had had pharyngitis, it was held a question properly for the jury whether such an inflammation of the throat was a 'sickness' within the intent of the inquiry, and the court remarked on the appeal of the decision that if it could be held as a matter of law that the policy was thereby avoided, then it was a mere device on the part of insurance companies to obtain money without rendering themselves liable under the policy." "And a concealment of the fact that one has dyspepsia in its milder forms is not a fatal concealment." And then again, in the same book, section 1849, we find: "The decisions seem to agree that the terms 'sickness' and 'dis

ease' do not mean a trifling illness nor an occasional physical disturbance resulting from accidental causes and not permanent in their effects, nor a temporary illness which readily yields to professional treatment and leaves no permanent physical injury or disorder calculated or having a tendency to shorten life." And this view is supported by *Penn Mutual Life Ins. Co.* v. *Mechanics Savings Co.*, 37 U. S. Appeals 692; *Insurance Co.* v. *Trefz*, 104 U. S. 197. Therefore, as the jury passed upon all these questions, and, in addition to the general verdict, found favorable answers for the plaintiff to the special interrogatories, and the verdict having been approved by the court, this Court will not disturb its findings; and, moreover, we are of the opinion that from the evidence, the findings of the jury were clearly right, and sustained by the authorities.

Entertaining the views we do in this case, it is immaterial to pass upon the question as to whether the circuit court erred in permitting the plaintiff's special reply to be filed to the statement of defense of the defendant, setting up that Dr. Frame was the agent of the company and that if the statements were false, that he had knowledge of it, and that his knowledge was the knowledge of the company. Neither is it material to pass upon the instruction covering the same point, and the other instruction being upon the question of the burden of proof, and we having decided that the burden of proof is upon the defendant, that disposes of the objection to that instruction,

Upon the whole case we are of the opinion that the judgment is right, and we affirm the same.

*Affirmed.*