26 So.2d 114

**NORTH CAROLINA MUT. LIFE INS. CO. v. COLEMAN.**

**6 Div. 239.**

Court of Appeals of Alabama.

Feb. 5, 1946.

Rehearing Denied March 5, 1946.

288

Jackson, Rives & Pettus and C. E. Wilder, all of Birmingham, for appellant.

Gibson & Hewitt, of Birmingham, for appellee.

290

stantially in Code form and the trial court properly overruled the demurrers thereto. Appellant then pleaded in short by consent the general issue, with leave to give in evidence any matter which if well pleaded would be admissible in defense, including plea of tender of premiums.

The undisputed evidence shows that appellant, a minor, aged 31, had been injured about the head in a mine accident, and was hospitalized therefor from March 25 to April 3, 1942.

Again on December 1, 1943 appellee was involved in a mine accident and was hospitalized from that date until December 24, 1943. At this time the diagnosis of his injuries was: "Fracture second lumbar vertebra. Contusion right hip and chest. Patient injured in Lewisburg Mines. Caught in car between armature and side."

According to appellee's testimony he used crutches from the time of his discharge until about June, and then used a cane until he returned to work in February, 1945, having worked continuously since that date.

It is further undisputed that when appellee signed the application for the policy on March 6, 1944, he was visiting in a friend's home, when Lula Menefee, an agent of appellant, came there on other business.

When the policy was delivered to appellee he was, according to his testimony, sitting in a chair on his porch, while Lula Menefee testified he was sitting in his automobile.

Lula Menefee testified appellant approached her concerning the application, and that at that time she did not know that appellee had suffered a broken back. This is denied by appellee who testified that he had known Lula Menefee for over ten years, and would see her when she was around the mines collecting insurance premiums, before and after he was on crutches. That every time he saw her after the accident she would ask him how he was getting along, and that at the time of signing the application he had his crutches with him.

In the application appellee certified: "I hereby certify I am free from disease and

HARWOOD, Judge.

The appellee, Johnnie Coleman, brought suit against the North Carolina Mutual Life Insurance Company, the appellant, on a health and accident policy of insurance issued by said company on March 20, 1944, pursuant to the written application of appellee made on March 6, 1944. The complaint as amended is sub-

that all statements made above and in part A are true, that one of which being false, forfeits my rights to receive benefits under this contract."

■ The application was not by reference made a part of the policy contract. Under such conditions the statements in the application are not considered warranties, but they may be received as evidence of such representations in support of a plea of fraud and deceit. Independent Life Insurance Company v. Butler, 221 Ala. 501, 129 So. 466.

There is in the policy itself the following provisions:

"Risks Not Covered

"(b) Sickness or accident resulting from injuries received, or diseases contracted before the delivery of this policy.

"No liability is assumed by the Company prior to the date hereof, nor unless on said date, and on the delivery of this policy the assured is alive and in sound health, and the premiums paid."

■ The latter provision is in legal effect a warranty. Reliance Life Insurance Company v. Sneed, 217 Ala. 669, 117 So. 307.

Premiums on the policy were paid to and including November 6, 1944.

About September 17, 1944, appellee began to suffer excruciating pain in the region of his stomach. He was hospitalized because of this condition on September 21, 1944 and on October 4, 1944 was operated on by Dr. B. S. Lester. The operation disclosed that appellee's disability resulted from an abscess of the omentum. Surgical relief of this condition was effected, and after two weeks in the hospital appellee left the hospital and was confined to bed at his home for two additional weeks thereafter.

Appellee duly filed claims with appellant for payment of benefits he alleged to be due under the policy. In the "Certificate of Attending Physician," supporting the claims, five of which certificates appear in the record, it is noted that Dr. Lester in answer to question 6 as to how long prior to the date of the certificate the disease began stated "undetermined" on three of the certificates, "don't know" on one, and "9–21–44" on another. In answer to question 12 "to what do you attribute the origin of the disease" he answered "don't know," and "undetermined" on two of the certificates, while the question was not answered on the remaining three. In answer to question 16, "Is the illness a primary condition" he answered "yes" on three of the certificates, leaving the space blank on the remaining two.

■ The appellee made out his prima facie case by introduction of the policy, proof of the happening of the event covered by the policy, and notice and proof thereof as provided by the policy. Pilot Life Insurance Company v. Hawkins, 222 Ala. 218, 131 So. 889; National Life & Accident Insurance Company v. Winbush, 215 Ala. 349, 110 So. 571; United Benefit Life Insurance Company v. Dopson, 232 Ala. 625, 169 So. 287.

The basic theories on which the defense relies is that the insured was not in sound health, so as to materially increase the risk of loss, at the time of the delivery of the policy contrary to the warranty in the policy, and that he misrepresented the condition of his health in the application, with actual intent to deceive.

Section 6, Title 28, Code of Alabama, reads as follows: "No written or oral misrepresentation, or warranty therein made, in the negotiation of a contract or policy of insurance, or in the application therefor or proof of loss thereunder, shall defeat or void the policy, or prevent its attaching, unless such misrepresentation is made with actual intent to deceive, or unless the matter misrepresented increase the risk of loss."

■ As to the interpretation of this section, Judge Rice, in Life Insurance Company of Virginia v. Mann, 28 Ala.App. 425, 186 So. 583, 584, certiorari denied, 237 Ala. 253, 186 So. 586, wrote:

"The Supreme Court of Alabama in construing the above Section has said as follows: 'To avoid the policy, unsound health must be misrepresented with intent to deceive and as being material to the risk, or as materially increasing the risk of loss (Independent Life Ins. Co. v. Seale, 219

Ala. 197, 121 So. 714; Life Ins. Co. of Virginia v. Newell, supra (223 Ala. 401, 137 So. 16)). There are types of fatal maladies of which the courts take judicial knowledge such as "tuberculosis and cancer," as being material to the risk of insurance; the courts take no judicial knowledge of or as to the several forms of diseases, such as syphilis, cirrhosis of the liver, or other ailments alleged in the pleas.' Metropolitan Life Ins. Co. v. Chambers, 226 Ala. 192, 194, 146 So. 524, 525.

\* \* \* \* \*

"The authorities are also uniform to the effect that the burden was on appellant to show that the insured was afflicted with a disease or was not in sound health when the policy was issued, and that by the term disease as regards life insurance a serious illness which has impaired the constitution and left in its wake some organic or chronic effect undermining the general health is meant.

"The Supreme Court in one case has stated the rule in the following language:

"'The diseases pleaded in these pleas as a breach of the alleged warranty not being as a matter of common knowledge, such as would increase the risk, to sustain the plea the defendant had the burden of showing that the insured was afflicted with the alleged diseases; that they were serious, and such as affected the general soundness of his health. National Life & Accident Ins. Co. v. Bridgeforth, 220 Ala. 314, 124 So. 886; Padgett v. Sovereign Camp W. O. W., 218 Ala. 255, 118 So. 456; Massachusetts Mut. Life Ins. Co. v. Crenshaw, supra, 195 Ala. 263, 70 So. 768; Providence Savings Life Assurance Society v. Pruett, 141 Ala. 688, 37 So. 700; Mutual Life Ins. Co. of New York v. Mandelbaum, 207 Ala. 234, 92 So. 440, 29 A.L.R. 649.

"'The term "disease" means more than a temporary disorder; it denotes a serious illness, which has impaired the constitution or left in its wake some organic or chronic effect undermining the general health. Joyce on Insurance, § 1848; Logan v. Provident Savings Life Assurance Society, 57 W.Va. 384, 50 S.E. 529; Peterson v. Modern Brotherhood of America, 125 Iowa 562, 101 N.W. 289, 67 L.R.A. 631; Cush-

man v. United States Life Insurance Co., 70 N.Y. 72; note 37 C.J. 460, treating "Scope and meaning of the word 'disease.'"

"'"High blood pressure," like vertigo, is more of a symptom than a disease. Mutual Benefit Life Ins. Co. v. Daviess' Ex'r, 87 Ky. 541, 9 S.W. 812. And it has been held that an anemic murmur of the heart "indicating no structural defects," but arising from temporary debility or weakness, is not a bodily infirmity. Manufacturers' Accident Indemnity Co. v. Dorgan, 58 F. 945, 7 C.C.A. 581, 22 L.R.A. 620.

"'And, likewise, that one who has "kidney trouble" from temporary ailments or causes is not necessarily affected with a "kidney disease." Hogan v. Metropolitan Life Ins. Co., 164 Mass. 448, 41 N.E. 663; Continental Life Ins. Co. v. Yung, 113 Ind. 159, 15 N.E. 220, 3 Am.St.Rep. 630.'"

Other than the hospital reports and certificates of the attending physician there was no medical testimony or evidence introduced. The above set out the bald medical facts.

There is no evidence as the origin of appellee's disability, either as to cause or time of its commencement. The record shows that appellee did return to work, presumably in the mines, on February 6, 1945, and has worked continuously since that time.

We do not intrinsically know, and therefore cannot say, that appellee's injuries were, at the time of the making of the application and delivery of the policy particularly in light of the doctrines of the decisions set out above, and the facts of this case of such a nature as to inherently bar recovery on this policy.

In our opinion a jury question was created on issues of fact.

Plaintiff's given charges Nos. 1, 2, 3, 4, and 5, set out in assignments of error Nos. 3, 4, 5, 6 and 7, respectively, correctly reflected in different wording substantially the definition of sound health set forth in the decisions of our Supreme Court and were properly given. Life Insurance Company of Virginia v. Mann, supra; Independent Life Insurance Company v. Butler,

221 Ala. 501, 129 So. 466; New York Life Insurance Company v. Hoffman, 238 Ala. 648, 193 So. 104.

 Appellant's assignment of error No. 1 states that the court committed error in its oral instruction to the jury in stating "If the premiums had been paid, the policy was in force and effect," to which appellant duly reserved an exception in the presence of the jury. The record merely shows that upon request by the court to the plaintiff if there were any exceptions that "Thereupon counsel for the plaintiff approached the bench and held a conference with the court, out of hearing of the Reporter." This of course did not perfect for appellant (defendant below) any objection and reservation to such portion of the court's oral charge. However immediately after said conference the court elaborated on its charge pertaining to the above point, and in our opinion rendered harmless any error that might previously have existed.

 Appellant's assignments of error Nos. 8, 9, and 13 charge error in refusal of written charges requested by appellant in effect amounting to the general charge in favor of appellant. Such refusal was in our opinion correct.

 The plaintiff's refused charges Nos. 3, 4A, 11 and 10, set in assignments of error Nos. 11, 12, 16, and 19, respectively, were properly refused as being invasive of the province of the jury.

 The charges set out in assignments of error Nos. 10, 15, 17, and 18 were fully covered by the able trial judge's oral charge.

 The refused charge set out in assignment of error No. 14 would in effect amount to a general charge in light of the agreement that tender had been made and its refusal of such charge was under these conditions correct.

 Assignment of error No. 20 pertains to the court's refusal to grant appellant's motion for a new trial. The record being free from prejudicial error this assignment is without merit.

Affirmed.