157 So.2d 674

UNITED SECURITY LIFE INSURANCE COMPANY

v.

M. C. MOORE

5 Div. 768.

Supreme Court of Alabama.

Nov. 14, 1963.

S. Palmer Keith, Jr., Birmingham, for appellant.

Speaks & Burnett, Clanton, for appellee.

PER CURIAM.

Judgment was rendered and entered in the Circuit Court of Chilton County in favor of plaintiff (appellee here) and against appellant for certain hospital and medical benefits provided in a policy of insurance issued by appellant to appellee. The policy also insured the wife of appellee. From this judgment, defendant appeals and seeks a reversal pursuant to several assignments of error.

The policy was limited in coverage to cancer originating after 12 o'clock noon, May 15, 1959, the effective date of the policy. The amount of the benefits, if any, due the plaintiff was stipulated by the parties and is not an issue in litigation.

The sole factual issue presented on this appeal is whether or not the disease, for which Mrs. Moore, wife of appellee, was hospitalized and which resulted in her death on October 30, 1959, originated prior to the effective date of the policy, or after that time. If it was manifested before, the exclusionary provision of the policy bars recovery.

We have held that the word "originates," as appears in the exclusionary provision of the policy, refers ordinarily to the time the sickness or disease is manifested, although the medical cause existed prior to this time. United Security Life Insurance Company v. Hilyer, 41 Ala.App. 226, 128 So.2d 736(2), cert. den. 272 Ala. 710, 128 So.2d 741; Jefferson Life & Casualty Company v. Bevill, 38 Ala.App. 384, 86 So.2d 289(4), cert. den. 264 Ala. 206, 86 So. 2d 292(4); National Casualty Company v. Hudson, 32 Ala.App. 69, 21 So.2d 568(4); 53 A.L.R.2d 686. The provision of such origination must be strictly construed against the insurer, and the illness or disease will ordinarily be deemed to have its inception when it first becomes manifest or active or when there is a distinct symptom or condition from which one, learned in medicine, can, with reasonable accuracy, diagnose the disease. 53 A.L.R.2d, supra.

We have also held that the burden of proof is upon the insurer to establish that the insured's claim is within the limiting provisions of the policy. United Security Life Insurance Company v. Hilyer, 41 Ala.App. 226, 128 So.2d 736(1).

We have carefully read all the testimony in this case and conclude that the appellant's contention that the motion for a new trial should have been granted, because the verdict of the jury was contrary to the great weight of the evidence, is without merit. There was evidence which we think supports appellant's contention that the malignancy for which Mrs. Moore was examined and hospitalized existed prior to May 15, 1959, but we do not think the verdict was contrary to the great weight of

the evidence that the malignancy manifested itself prior to the effective date of the policy.

The plaintiff testified that he took his wife to the hospital on June 2, 1959, before which time she had not been treated for cancer. Further, he testified, that she had been working in the home prior to that time; that on the day she was taken sick, she had been dressing chickens to put in the deep freezer; and that she had made no complaints about being sick.

On cross-examination, plaintiff admitted his signature to a claim filed with defendant for the benefits of the policy. The claim contained the following:

"On what date was the cause of disability first noticed? *X6 wks ago*"

The witness explained that he did not fill out the form and that he did not read it.

■ This proof of loss was not conclusive on plaintiff, only prima facie evidence of the facts therein stated, but subject to explanation, avoidance or rebuttal. Green v. Mutual Benefit Health & Accident Association, 267 Ala. 56, 99 So.2d 694(1), 72 A.L.R.2d 549.

Plaintiff introduced Dr. William H. De-Ramus, whose qualifications as a practicing physician were admitted by defendant; also defendant admitted that the witness was "a qualified doctor for the disease and trouble in this case." This witness testified that he first saw Mrs. Moore on the night of May 30, 1959, and his findings were as follows:

"A Well, at that time, she didn't feel well. She had some pain in her stomach, very low grade fever. I told her, at the time, I'd like for her to come in for a checkup to the hospital. At that time, she wanted to go back and keep working. She just didn't think there was much wrong with her, and that she'd come back if she didn't get any better.

"* * * * * *

"Q You thought she had an inflam-(m)atory trouble? Did you, was there anything there that, in any manner, on that occasion, that indicated cancer to you, Doctor?

"A Not at all. Not at that time."

Witness then testified that he saw the patient again on June 2, 1959, at which time she was admitted to the hospital. Reading from the history given by the patient, the witness quoted as follows:

"A Well, the chief complaint is pain in the abdomen, pain when the bowels move, and some distention of the abdomen, * * *. That the patient has been feeling badly for the past six weeks, feeling under par. The admission to the hospital: The general lay was loss of appetite, pain in the lower abdomen, and the pain was increased when the bowels moved. She was seen that night a week ago before admission.

"* * * * * *

"A She was seen the week, seen at night a week before admission, and given some medication. * * * She returned on the date of admission, that was on the 6th. and 29th., I mean the 6th. and 2nd., this date * * * saying she was much worse, and unable to sleep at night, and the pain was increasing in the abdomen, and the pain was worse when the bowels would move. Past history: Patient has apparently been healthy all her life; no operations; no serious illness, and had been working every day up to the day of admission to the hospital. * * *

"* * * * * *

"Q * * * Let me ask you this? Was there anything, at the time * * * you first saw her, on May the 30th., at night, that indicated, in anyway, that she had cancer?

"A Well, there was no way I could tell. No, sir.

"Q Yes, sir.

"A Nobody else, nobody could tell."

Witness then proceeded to testify that on June 6th, 1959, he operated and found a cancerous condition in her abdomen.

"A Well, it was massive. She had the, the pelvis was a mass, and the left side, which was matted down, frozen, we call, so call it, just like ice. Also the right side, but the cancer, I thought, was coming from the left ovary. She had also some metastatics areas on the omentum, that is the big fat area going to the intestinal tract, and some in the peritoneum, the lining of the abdomen, cavity.

"* * * * * *

"Q Then you, as I understand your testimony, Doctor, do not have any judgment as to the origination of that cancer, as to any time prior to the date you found it on June the 2nd., is that right, or not?

"A No, sir, I don't know exactly. I didn't know she had a cancer, at that time. Of course, I know now it came from that left ovary, but I don't know when it originated.

"Q Can you say how long prior to that time it came from her left ovary?

"A I couldn't, myself."

On cross-examination, witness again testified:

"A She told me she had been feeling badly for six (6) weeks; hadn't been feeling right. She wasn't the type to complain too much, but her words were that she, 'I just don't feel, haven't been feeling right for six (6) weeks,' was that she couldn't eat good; she had lost her appetite, of course, and she had a little pain in her lower abdomen.

"* * * * * *

"Q Now, by loss of appetite, is that a symptom of cancer?

"A It is a symptom of a lot of things, could be cancer.

"Q I didn't ask you what all it was a symptom of. Is it a symptom of cancer?

"A Yes, sir, it is.

"* * * * * *

"Q Did you locate the mass on May 30th.?

"A She was tender. I did not, she was so tender, I didn't notice a mass. I thought it was merely inflam(m)atory. She was tender on both sides at that time.

"* * * * * *

"Q And, I believe, I believe you had, at that time information that this lady had been suffering for six (6) weeks, prior to May 30th.?

"A She had been feeling badly, she said.

"Q And having pain?

"A Well, now, I don't know too much about pain, because she had been working every day. She might (have) had, but I do know that she had been having pain for one week, I think. That's all I can say truthfully about the matter, because I don't know about the other."

There was much evidence as to the extent of the cancer and the exceptional speed that the cancer spread to other parts of the body after the operation, and also how quickly death occurred.

"A All I can answer to that is by saying that this tumor spread from the lower part of the abdomen to the lungs, and all over the, way up in the lungs from June 2, in the five (5) months, to the 30th. of October. I mean she was loaded.

"* * * * * *

"Q Now, on that exhibit, as to the date the contracting was done (referring to the proof of loss), what is the answer to that? (Par. Added.)

"A Six (6) weeks, I would say. That's what, I just put down. That's just what I thought it was.

" *    *    *    *    *    *

## RE-DIRECT EXAMINATION

"Q * * * Now, Doctor, from your entire examination of Mrs. M. C., or Velleda Moore, from the time that you first saw her, and continuing up until the time of her death, all of your diagnosis, and treatment, and your observation of her, can you tell this Jury, and this Court, as to whether or not, at twelve o'clock, noon, on May the 15th., she had cancer, or not?

"A I couldn't tell them that.

"Q You couldn't tell us that, could you, Sir?

"A Not definitely.

"Q Now, could you tell us from that examination, if I haven't asked you this, Doctor, if I have, I beg your pardon, if there was any type of manifestation that you could tell, from your observation, that it had been there prior to twelve o'clock, noon, May the 15th., as a cancer, any type of manifestation, of any type, or description?

"A Not at all.

"Q All right.

"A The woman was working every day.

"Q Is there anything from your observation, your treatment, your diagnosis of this lady, that, in your opinion, as a Doctor, that could tell you that this originated at any time prior to May the 15th., 1959, * * * as a cancer?

"A I can't swear that there was. That's a hypothetical question. I said about, maybe it did start. That's why I put it down as six (6) weeks. * * *

"Q When you said May, and put six (6) weeks on here, was that only an expression, or an idea, on your part, Doctor?

"A It would have to be. I didn't know. I don't. * * *

"Q You don't state that, under oath, that it happened any six (6) weeks before, do you?

"A I couldn't do that.

## RE-CROSS EXAMINATION

"Q Then your statement made in this Exhibit One was your opinion of the date that this was contracted, not your actual swearing that it occurred on any particular date, but this is your opinion?

"A I just had to put down a date on here. That's right.

"Q That was your opinion, Sir?

"A That's right."

Plaintiff next introduced Mrs. Leila Belle Moore, who testified that the plaintiff is her brother-in-law. Also, she testified that she was defendant's agent in soliciting and taking plaintiff's application for the policy, the subject matter of this suit. Further, she testified that after May 15, 1959, the date the application was made for the insurance, the insured, Mrs. Moore, continued to work for some period of time.

The defendant did not offer evidence other than the proofs of loss and did not put up any witnesses.

The foregoing extracts, in our opinion, fairly represent the evidence so far as it is relevant as to whether or not the cancer which caused the insured's death manifested itself.

We cannot say that the verdict of the jury on the issue of manifestation before the effective date of the policy is contrary to the great weight of the evidence. The burden was on the defendant to reasonably satisfy the jury that the cancer manifested itself, prior to May 15, 1959, by distinct symptom or condition from

which one learned in medicine could, with reasonable accuracy, diagnose the disease. The tendency of Dr. DeRamus' testimony was that he couldn't do so when he first examined the patient on May 30, 1959, and he was not reasonably sure of her true condition until the operation on June 6, 1959.

■ Appellant contends, by proper assignment of error, that the court erred in refusing its request for the affirmative charge. We are unable to find in the record any such charge in writing as required by § 273, Title 7, Code of Alabama 1940. In the absence of such written charge, properly refused, we cannot consider this assignment.

■ Appellant also contends that the trial court erred in denying its motion to exclude all the evidence. Assuming this request was made, although the record is not clear, the court's refusal (in civil cases) is not the subject of review. Mobile Light & R. Co. v. Portiss, 195 Ala. 320, 70 So. 136(6); McCray v. Sharpe, 188 Ala. 375, 66 So. 441(2).

Appellant contends that the trial judge erred in charging the jury:

"But, now, I charge you, that in this case, I am not saying there is, but I am saying there is other evidence, for you to consider besides just the proof of loss, and that is all the testimony; the testimony of all the witnesses in the case, and in determining when she became afflicted with cancer, and when it originated, * * *."

■ We do not consider this excerpt as a charge upon the effect of the evidence or a comment thereon. The defendant admittedly argued to the jury that the facts contained in the proofs of loss, if not avoided or rebutted, would be conclusive against appellee. We construe the excerpt as an effort on the part of the trial judge to inform the jury that the proofs of loss were not to be considered alone, to the exclusion

of other evidence in the case, but that it should consider all the evidence. This charge was proper because there was other evidence offered for the jury to consider.

■ Plaintiff, on direct examination, was asked a question as follows:

"Q Did you have any knowledge that she had any type of cancer?"

Objection was made on the ground that the witness was not a medical expert and wouldn't have an opportunity to observe her at all times, or be in position to have full knowledge of this situation.

"A No, sir, she hadn't been sick, none of the time."

On objection to this answer by defendant, the answer was excluded.

"Q During the period from May 15, 1959 to June 2, 1959."

Objection was made by defendant on the same grounds as assigned to the prior question.

The assignment of error is addressed to the question first posed and not to the completed question.

Therefore, the assignment does not present anything for this court to review.

However, we think the question was not subject to the objection. Had the witness answered that he did have such knowledge, the answer would not have injured defendant. As the question was answered, the witness merely stated that he had no knowledge of such condition. Any lay witness is privileged to deny knowledge of a condition that requires an expert to say that such condition exists.

By way of conclusion, we wish to state that appellee has not favored us with a brief. We find by our own research that the assignments of error, not waived and properly argued, are without merit. The judgment of the trial court is due to be affirmed, and it is so ordered.

**648**

The foregoing opinion was prepared by B. W. Simmons, Supernumerary Circuit Judge, while serving on the Supreme Court at the request of the Chief Justice, and was adopted by the court as its opinion.

Affirmed.

LIVINGSTON, C. J., and LAWSON, GOODWYN, and HARWOOD, JJ., concur.