168 So.2d 262

**ROYAL FAMILY INSURANCE CO. and United Security Life Insurance Company**

v.

**Jim GRIMES.**

**4 Div. 491.**

Court of Appeals of Alabama.

Oct. 20, 1964.

S. P. Keith, Jr., Birmingham, for appellants.

W. H. Baldwin, Andalusia, and J. Ned Moore, Opp, for appellee.

PRICE, Presiding Judge.

Appellee recovered judgment in the Circuit Court of Covington County against each of the appellants for hospital and medical benefits provided in policies of insurance issued to him by appellants.

By agreement the cases were jointly tried with separate judgment rendered in each case, and are here submitted on one record.

The amount of benefits, if any due plaintiff was stipulated by the parties.

The pertinent provisions of the respective policies are that loss from sickness or disease is covered only if the sickness or disease commenced 30 days after the effective date of the policy, and further, that loss resulting from cancer is covered only if the cause thereof originated six months after the effective date of the policy.

The effective date of the policies was February 15, 1961.

Dr. James Dunn, a duly qualified physician of Opp, Alabama, testified that cancer of the mouth was the condition necessitating the operation made the basis of the claim involved. The evidence shows the operation, performed on December 27, 1961, consisted of "a resection of his mandible, which is his jaw bone. They took off the left half of it, from his chin on to back here."

Dr. Dunn further testified he first treated plaintiff on November 12, 1958, for a condition of the mouth known as leukoplakia. Leukoplakia is a thickening and whitening tissue area involving just the mucous membrane on the inside of the mouth. It is quite prevalent in the mouths of tobacco chewers and snuff dippers. The leukoplakia was on the left side of plaintiff's mouth, around the back of his jaw, extending down into the globe of his mouth under his tongue. The witness treated plaintiff for leukoplakia from time to time from 1958 until December of 1961.

In October of 1961, Dr. Dunn made a clinical finding of cancer of the mouth and referred plaintiff to Montgomery for surgery. Dr. Dunn testified he did not think plaintiff had cancer of the mouth in 1958, and did not think he had it in January, 1961; that the only way to make a positive statement of cancer is by a biopsy and that he never performed a biopsy on plaintiff, but clinically he thought he had cancer in October, 1961. Dr. Dunn also testified that on January 16, 1961, he sent plaintiff to Montgomery for removal of cancer on his nose by x-ray.

One theory relied on by appellants is that plaintiff misrepresented the condition of his health in the applications. Some of the questions and answers in the applications were:

"Have you * * * ever had * * * cancer?

"No."

"Have you * *, * received medical or surgical advice or treatment within the past five years. If answer is 'Yes,' give details below:

| Date | Illness or Accident | Doctor |
|------|---------------------|--------|
| 11/14/57 | Accident—cut hand | Dr. Lee |
| | | Opp, Ala. |

The plaintiff testified he could not read, but the soliciting agents asked him some questions about his arm. He told them about going to Dr. Lee in 1957, when he lost his hand in an accident. He did not tell them about the leukoplakia in his mouth but he answered all the questions that were asked him. He signed the applications by making his mark after the agent filled in the blanks, but he did not read the applications after the blanks were filled in, since he could not read.

Mr. Frank A. Aspinwall, President of Royal Family, and Vice-President in Charge of Claims for United Security, testified the policies were issued on the basis of the applications filed with the companies, and that the companies relied upon the representations made in the applications in the issuance of the policies; that if they had known plaintiff had leukoplakia this would have been checked out with the doctor and the policies, if issued, would have been issued with waivers as to that condition, or complications from it.

Appellant insists that the leukoplakia, or the condition that existed in 1958 and continued to exist until the time of surgery, was the primary cause of the loss; that it is possible the cancer developed from the leukoplakia, since the same parts of the face and mouth were involved, therefore, the cause originated in 1958 and not in December, 1961.

■ The applications were not by reference made a part of the contract. When such is the case the statements contained in the applications are not warranties, but may be received as evidence of such representations in support of a plea of fraud and deceit. North Carolina Mutual Life Ins. Co. v. Coleman, 32 Ala.App. 287, 26 So.2d 114; Independent Life Ins. Co. of America v. Butler, 221 Ala. 501, 129 So. 466.

It is appellee's contention that there is no testimony in the record, medical, lay or otherwise, tending to show that there was any connection between the pre-existing leukoplakia and the cancer which required the operation.

We agree with appellee's contention that the evidence does not conclusively show that the leukoplakia caused the cancer and that there is nothing to indicate when the cancer itself first developed. Dr. Dunn's testimony is that he first noticed the cancer in October, 1961.

■ It is a well established rule of law that the "word 'originates,' as appears in the exclusionary provision of the policy, refers ordinarily to the time the sickness or disease is manifested, although the medical cause existed prior to this time. United Security Life Insurance Company v. Hilyer, 41 Ala.App. 226, 128 So.2d 736(2), cert. den. 272 Ala. 710, 128 So.2d 741." United Security Life Insurance Co. v. Moore, 275 Ala. 642, 157 So.2d 674.

■ As to whether the plaintiff was guilty of fraud or deceit in respect to the answers to questions in the applications was a question for the jury. The evidence also presented a jury question as to whether the disease requiring the operation on plaintiff's jaw originated prior to the effective date of the policy.

Under all the evidence adduced, we are unable to say that the verdict of the jury is contrary to the weight of the evidence under the rule that obtains. We find no error in the overruling of the motion for a new trial. Cobb v. Malone, 92 Ala. 630, 9 So. 738.

The judgment is affirmed.