**Fred DIRGO, Appellant,**

v.

**ASSOCIATED HOSPITALS SERVICE, INC., d/b/a Blue Cross, Appellee.**

No. 55781.

Supreme Court of Iowa.

Sept. 19, 1973.

Smith, Peterson, Beckman, Willson & Peterson, Council Bluffs, for appellant.

Davis, Jacobs & Gaul, Sioux City, for appellee.

Heard before MOORE, C. J., and RAWLINGS, LeGRAND, UHLENHOPP and McCORMICK, JJ.

LeGRAND, Justice.

The only question for decision here is plaintiff's right to recover under a hospitalization certificate issued to him by Associated Hospitals Service, Inc., commonly known as Blue Cross. The facts are virtually undisputed and the outcome depends upon our interpretation of the following provision in the certificate issued to plaintiff:

"*Existing conditions.* Until this contract * * * [has] been in force for 11 consecutive months, hospital service to be paid for by Blue Cross shall not be available for (A) any illness, injury or other condition existing on the effective date of this contract or which progressed or developed from or was a complication of or secondary to any illness, injury or other condition existing on such effective date, and (B) * * *."

In January, 1968, plaintiff applied for Blue Cross hospital expense coverage. His application was approved effective March 1, 1968. It is admitted this contract was in force at the time of his hospitalization and that he is entitled to payment of $3,584.73 unless the above exclusion excuses defendant from obligation.

Provisions in hospitalization contracts which establish a waiting period before coverage becomes effective for a specific illness or condition, although valid and enforcible, are construed strictly against the insurer. See 45 C.J.S. Insurance § 893, page 972 (1945). The matter to be decided here is whether plaintiff's illness—diverticulitis—was one which was in existence on March 1, 1968, the effective date of the contract. Defendant argues some significance from the use of the word "condition" in addition to "illness" in the certificate. However, we believe "condition" does not extend the exclusion. We agree with what was said in Broccolo v. Horace Mann Mutual Casualty Company, 37 Ill.App.2d 493, 186 N.E.2d 89, 91 (1962) that "the word 'condition,' as used to describe a state of being, is used synonymously with 'sickness' in discussing and construing an insurance policy."

It is necessary to relate in some detail plaintiff's medical history prior to that date. Beginning in 1967, plaintiff had trouble with a chronic prostate infection for which he received medical attention. In August, 1967, surgery was performed to correct his condition. At that time, there was a routine examination of his abdominal tract which revealed no abnormality. He continued complaining of fatigue and vague lower abdominal discomfort—symptoms present prior to his surgery—on the frequent occasions of his post-surgery examinations. He was seen by Dr. A. M. Romano, his attending physician, on September 14, September 22, October 5, November 3, and December 21, all in 1967. At no time did any examination disclose symptoms which could have led to a diagnosis of diverticulitis, atlhough the general

complaints about fatigue and abdominal discomfort were consistent with that illness as well as with many others.

On March 8, 1968, plaintiff reported for what was to be a routine check-up. It was then determined he should be hospitalized for a "more extensive workup" since his longstanding complaints persisted. This was just one week after the effective date of his hospitalization coverage. He entered the hospital on March 11, 1968, for what Dr. Romano described on the hospital records as either possible pyelitis, an infection of the urinary tract, or diverticulitis, an infection of the colon. On March 13, 1968, plaintiff's condition was definitely diagnosed for the first time as diverticulitis. This diagnosis resulted from an x-ray examination of the bowel.

We set out the important parts of Dr. Romano's testimony:

"Prior to March 13, 1968, [the date of the x-ray] I did not have any knowledge of any * * * diverticulitis. I had not had any type of symptom or anything from any hospital record or doctor or anything of any nature that indicated to me that Fred Dirgo may have had that condition. March 13, 1968, was the first time that I became aware of that condition. I had never been able to observe any manifestation of any kind of this condition prior to March 13, 1968."

On cross-examination, the doctor testified this way:

"If on the 1st of March or on the 29th of February of 1968 I had hospitalized Mr. Dirgo and had him undergo a barium x-ray on his colon, this would have shown, as far as I know in my best medical judgment, a condition such as was shown by the x-ray that was taken in the March hospitalization in 1968. There is no doubt in my mind that the chronic diverticulitis of the sigmoid colon which caused Mr. Dirgo to be admitted to the hospital in March of 1968 existed on the 29th day of February of '68 and on the

1st day of March, 1968. The symptoms did exist at that time."

At another place the doctor said:

"I had not made any diagnosis prior to the x-rays concerning the diagnosis of diverticulitis of the sigmoid colon, this condition was not secondary to any other illness and was not a condition which progressed or developed or was a complication of or secondary to any illness, injury or condition known to me which existed prior to that time * * * I had not rendered any medical or surgical treatment or advice for diverticulitis of the sigmoid colon prior to March 1st, 1968."

There is more testimony of the same kind, but this is sufficient to show the important facts upon which the trial court's decision rests. They are: (1) plaintiff suffered from symptoms for some time prior to March 1st, 1968, which were later medically related to diverticulitis; (2) the condition itself existed on March 1st, 1968, the effective date of his hospital coverage; and (3) no diagnosis of this condition was made until March 13, 1968, approximately two weeks after the effective date of his hospitalization coverage, although such diagnosis *could* have been made prior to that date by use of the same procedures resorted to thereafter.

■ This is a law action tried to the court, whose findings, if supported by substantial evidence, are binding upon us. Rule 344(f)(1), Rules of Civil Procedure. Our question, then, is whether there is substantial evidence to support the trial court's conclusion that plaintiff's illness existed on March 1, 1968, the date upon which his hospitalization certificate became effective.

■ The principles upon which our decision depends are firmly established. First we should point out that although certificates such as Blue Cross issues are not strictly "insurance" policies, nevertheless the rules applicable to interpreting the cer-

tificate issued by the defendant are the same as those governing insurance contracts. Wenthe v. Hospital Service, Inc., 251 Iowa 765, 768, 100 N.W.2d 903, 905 (1960).

█ It is generally held a provision postponing protection for certain illnesses until a later date means only those illnesses which have already become manifest or active. The rule is stated in 45 C.J.S. Insurance § 893, page 972, this way:

"* * * Such clauses have been strictly construed against the insurance company, and an illness or disability has been deemed to have its inception when the disease first becomes manifest or active, and not at the earlier time when the medical cause of the disease may have begun or had its origin. Accordingly, such a policy covers losses resulting from illness which first manifests itself after the prescribed period notwithstanding the medical cause thereof antedated such period. Where the policy insures against sickness contracted during its term, insured has been allowed recovery where his disease was contracted before such time but did not cause disability until some time during the term of the policy. * * * "

Numerous cases adopting this view under various circumstances and different (but similar) contract provisions are collected in an Annotation in 53 A.L.R.2d 689 (1945).

In Richards v. American Security Life Insurance Company, 303 P.2d 1110, 1111, 1112 (Okl.1956), the court adopted the following from one of its previous opinions:

"In an insurance policy of express terms covering expense of hospital confinement 'resulting from sickness the cause of which originates while this policy is in force,' the sickness is deemed to have its inception when the sickness first becomes manifest or active as the cause of the hospital confinement, and not at an earlier time when the medical cause of the sickness may have had its origin."

The Kansas Supreme Court stated the same rule in Southards v. Central Plains Insurance Company, 201 Kan. 499, 441 P.2d 808, 811 (1968) this way:

"A decided majority [of courts] * * * adhere to the rule that the origin of a sickness or disease, within the meaning of a health and accident policy, is that point in time when it is manifest to a person learned in medicine from symptoms or other physical conditions that the illness or disease exists."

Other cases supporting this view include Mayer v. Credit Life Insurance Company, 42 Mich.App. 648, 202 N.W.2d 521, 523; Keller v. The Orion Insurance Company (8th Cir. 1970), 422 F.2d 1152, 1153; Hovis v. Industrial Hospital Association (1967) 71 Wash.2d 169, 426 P.2d 976, 977; Rosenberg v. North Dakota Hospital Service Association, 136 N.W.2d 128, 134 (N.D.1965); Royal Family Insurance Co. v. Grimes (1964), 42 Ala.App. 481, 168 So.2d 262, 264; Horace Mann Mutual Insurance Company v. Burrow (1963) 213 Tenn. 262, 373 S.W.2d 469, 472; Craig v. Central National Life Insurance Company, 16 Ill.App.2d 344, 148 N.E.2d 31, 36 (1958); Old National Insurance Company v. Johnson (Tex.Civ. App.1958), 312 S.W.2d 715, 717; Jackson v. Pacific Mutual Life Insurance Co. (Mo. App.1957), 308 S.W.2d 291, 293; Davidson v. First American Insurance Company (1935), 129 Neb. 184, 261 N.W. 144, 146; Smith v. Benefit Association of Railway Employees (1932), 187 Minn. 202, 244 N.W. 817, 819; Cohen v. North American Life & Casualty Co. (1921), 150 Minn. 507, 185 N.W. 939.

Although this court does not seem to have passed on this matter directly, we skirt close to the issue in Snyder v. National Travelers' Benefit Association, 180 Iowa 1344, 1349, 164 N.W. 176, 177, 178 (1917).

However, this does not mean an illness or condition must be diagnosed by name before it may be said to exist. As some courts have pointed out, symptoms may be present and may have progressed sufficiently that an illness is said to exist before it has been medically designated by its proper name.

This was the holding in Dowdall v. Commercial Travelers Mutual Acc. Assn. (1962), 344 Mass. 71, 181 N.E.2d 594, 596, where the court said,

> "[We] are of opinion that the plaintiff's disability resulted from a disease 'originating' several years prior to the issuance of the policy on November 10, 1952. While the definitive diagnosis was not made until later, it is apparent that the progress of the disease was well advanced when the policy was issued. Knowledge of the existence of the disease on the part of the plaintiff was not required; it was sufficient if the disease had in fact originated prior to the effective date of the policy. We are mindful that the word 'originating' in a policy of this sort should receive a restrictive construction; otherwise the purported coverage would be illusory. The mere presence of latent germs or seeds of illness in the body prior to the issuance of such a policy would not preclude recovery. 'Few adults are not diseased, if by that one means only that the seeds of future troubles are not already planted.' Grain Handling Co., Inc. v. Sweeney, 102 F.2d 464, 466 (2nd Cir.). Thus, it has generally been held in construing policies of this type that the origin of a sickness or disease is deemed to be the time when it first becomes manifest or active, or when there is a distinct symptom or condition from which one learned in medicine can diagnose the disease. See note 53 A.L.R.2d 682, 689. Here that test has been satisfied for the symptoms of the disease had become manifest long before the issuance of the policy."

Similar results were reached in Taormina v. National Hospital Service Assn. (La.App.1949), 43 So.2d 31, 33 (condition existed prior to effective date of contract but not diagnosed until afterwards), and Tasman v. Associated Hospital Service of New York (1959), 19 Misc.2d 809, 198 N.Y.S.2d 49, 51 (symptoms of long standing but no prior medical diagnosis.)

■ The trial court decided the facts bar recovery by plaintiff here because his illness existed on the date his hospitalization coverage became effective. Under the record before us, we find there was substantial evidence to support this conclusion. Dr. Romano's testimony establishes plaintiff's condition existed long prior to March 1, 1968; that symptoms later determined to be indicative of diverticulitis were present for at least eight months before the certificate was issued; and that a diagnosis of diverticulitis could have been made from facts and symptoms then existing by the use of standard medical procedures.

We have not discussed plaintiff's assertion he was entitled to summary judgment because it is obvious from what we have said that we find there was a genuine issue of material fact to be decided. The motion for summary judgment was properly denied.

For the reasons stated, the judgment is affirmed.

Affirmed.

All Justices concur, except RAWLINGS, J., who dissents.