## UNION LIFE INSURANCE COMPANY OF INDIANA v. JAMESON.

[No. 4,316. Filed April 21, 1903.]

INSURANCE.—*Evidence.*—*Answer Not Responsive to Question.*—Where a physician as a witness in an action on an insurance policy had stated that by alcoholism he meant the excessive use of alcohol, or beverages containing alcohol, an answer to the question, whether the effects produced by alcohol were easily observed under circumstances of that kind, that in excessive alcoholism they are easily observed, was properly stricken out, the same not being responsive to the question. *p. 30.*

SAME.—*Evidence.*—*Harmless Error.*—Where insured agreed in his application not to use intoxicating liquor to excess and not to practice any pernicious habit that obviously tends to shorten life, the refusal of the court to permit a medical expert to state whether he regarded the habitual use of intoxicating liquor to excess a pernicious habit was harmless, since defendant was not required to show both the use of liquor to excess and some pernicious habit to constitute a violation of the contract. *pp. 30, 31.*

SAME.—*Evidence.*—Where defendant in an action on an insurance policy introduced a witness who testified that he had worked at the same place with insured, and had seen him drink liquor, and had seen him drunk, there was no harmful error in permitting

Union Life Ins. Co. v. Jameson.

the witness to testify on cross-examination as to complaints he made to witness of pains in his head and chest. *p. 31.*

INSURANCE.—*Instruction.*— *Construction of Contract.*—An instruction in an action on an insurance policy to the effect that such a contract should be liberally construed with a view to effectuate its purpose and if there was any ambiguity in an interrogatory in the application it should be construed most strongly against the company, and most favorably to the insured, in whose favor all doubts should be resolved, was erroneous, where the contract of insurance was plain and unequivocal. *pp. 31–33.*

SAME.—*Warranties.*—*Intoxicating Liquors.*—*Instructions.*—Where insured warranted that he would not use intoxicating liquors to excess nor practice any pernicious habit that obviously tended to shorten life, and payment of the policy was contested on the ground that insured drank to excess, it was error to instruct the jury that if they found from the nature of the deceased's employment, and his physical condition occasioned thereby, he became weak and exhausted, and was compelled to, and did, resort to stimulants, as he believed, for his own protection, and to enable him to continue his labors, and, in so doing, occasionally drank intoxicating liquors, even to the extent of being under the influence thereof, such indulgence could not be termed excessive, and could not be urged as a defense, unless you further find that such indulgences were excessive, or that they tended to, or did, shorten his life, since the instruction left it with insured to determine for himself what would be an excessive use of liquors. *pp. 33, 34.*

From the Superior Court of Allen County; *J. H. Aiken*, Judge.

Action by James H. Jameson against the Union Life Insurance Company. From a judgment for plaintiff, defendant appeals. *Reversed.*

*Allen Zollars, C. H. Worden* and *F. E. Zollars*, for appellant.

*Wilmer Leonard* and *Elmer Leonard*, for appellee.

ROBINSON, J.—Appellee obtained a judgment upon a policy of insurance. Overruling a motion for a new trial is the only error assigned that is argued.

In the application signed by the insured is the following: "I, the applicant for insurance, hereby declare and warrant that I am not now afflicted with any disease or disorder, so far as I know, and that I do not now, and will

not, use intoxicating liquors to excess, nor practice any pernicious habit that obviously tends to shorten life, and that the foregoing application, and this declaration, together with the answers and explanations made, or to be made, to the medical examiner to the various questions in parts one and two of this application and examination shall constitute a warranty, and shall form the exclusive and only basis of the contract between myself and the Union Life Insurance Company of Indiana." The insured also made certain answers to questions as follows: "To what extent do you use intoxicating liquors? (Avoid the use of the word 'temperate,' it is indefinite.) A. A glass of beer occasionally. State full particulars as to what your habits are in this respect. A. Very moderate. Have you ever used them to excess, or to the extent of impairing your health? A. No."

Appellant defended upon the ground that after the date of the application, April 28, 1899, the insured used intoxicating liquors to excess, and that such dissipation contributed to his death October 12, 1900. After a witness—a physician—had stated that he meant by "alcoholism" the excessive use of alcohol, or beverages containing alcohol, he was asked: "Are the effects produced by alcohol easily observed under circumstances of that kind? A. In excessive alcoholism they are easily observed." There was no reversible error in striking out this answer. The answer is not responsive to the question. The witness had defined "alcoholism" as the excessive use of alcohol, and it was about this use of alcohol that he is now asked, and not about excessive alcoholism. From the witness' own definition there must be a difference between "alcoholism" and "excessive alcoholism," and the question was not concerning the latter.

There was no reversible error in refusing to permit a medical expert to state whether, in his opinion, he regarded the habitual use of intoxicating liquor to excess as a per-

nicious habit. In the application the insured agreed not
to use intoxicating liquor to excess, and not to prac-
tice any pernicious habit that obviously tends to shorten
life. If he did either, he violated the terms of his
contract. He did not agree not to use intoxicating liquor,
but did agree that he would not use it to excess. Appellant
was not required to show both the use of liquor to excess
and also some pernicious habit. If the proof showed that
the insured habitually used intoxicating liquor to excess,
and the question assumes that he did, the terms of the con-
tract were violated by the insured, whether such use was
shown to be a pernicious habit or not. Moreover, as the
witness testified in answer to other questions as to the effect
of the excessive use of intoxicating liquor, we fail to see
how there could be any harmful error in not permitting an
answer to the question.

A witness testified on direct examination that he worked
at the same place with the insured several months, and had
seen him drink liquor, and had seen him drunk. There
was no harmful error in permitting the witness to testify
on cross-examination as to complaints made by the witness
of pains in his head and chest. It was proper to go into
the circumstances in connection with the alleged intoxica-
tion. Whether the insured was intoxicated at any time,
or used liquor to excess, was a question for the jury to de-
termine, and it was proper for them to consider such facts
and circumstances as would show the actual physical con-
dition of the insured at the time.

Complaint is made of the following instruction: "A
contract of insurance, like the one in the case at bar, is by
the court liberally construed with a view to effectuate its
purpose. The language of the policy and of the interrog-
atories and provisions of the application are prearranged
by the company. In its preparation the insured has no
part. Whatever there may be in the language so prepared
by the company which has any tendency to defeat the main

purpose of the contract should be strictly construed against the company. If there is any ambiguity in an interrogatory propounded to the applicant, it should be construed most strongly against the company, and most favorably to the insured, in whose favor all doubts should be resolved."

While the above instruction contains a correct statement of a principle of the law governing the construction of contracts of insurance (*Penn Mut. Life Ins. Co.* v. *Wiler,* 100 Ind. 92, 50 Am. Rep. 769), yet, as the language indicates, it is a rule for the guidance of courts in the construction of such contracts. It has been so long and often held that it is the duty of the court, and not the jury, to construe a contract that is plain and unambiguous, that the citation of authorities is unnecessary. The first sentence in the instruction states a matter of no concern to the jury, and, if it had any effect, the jury doubtless inferred that they should give the contract a liberal construction. It may be the fact, also, that the language of the policy and the provisions of the application were prearranged by the company, and that in the preparation of the policy the insured had no part, but there was no evidence to that effect. Had these been material facts in appellee's case, an instruction could not assume their truth, where they were not only not proved, but about which no testimony was offered. But in the concluding part of the instruction, that, "if there is any ambiguity in an interrogatory propounded to the applicant, it should be construed most strongly against the company, and most favorably to the insured, in whose favor all doubts should be resolved," it is left to the jury to determine whether there is any ambiguity in the interrogatories asked the applicant; and, if there is, they are told how they should then construe it. We fail to see how the jury could otherwise understand the instruction, than that they were to construe the contract, and that this construction should be made according to certain rules. It is not claimed that the contract is ambiguous. No attempt was made to explain

any supposed ambiguity. As the contract was plain and unequivocal, it was error to leave its construction to the jury. See *Masons, etc., Assn.* v. *Brockman,* 20 Ind. App. 206; *Dixon* v. *Duke,* 85 Ind. 434; *Louthain* v. *Miller,* 85 Ind. 161; *Dutch* v. *Anderson,* 75 Ind. 35.

Complaint is also made of the sixteenth instruction: "If you find from the evidence, that from the nature of the deceased's employment, and his physical condition occasioned thereby, if it were so occasioned, he became weak and exhausted, and was compelled to, and did, resort to stimulants, as he believed, for his own protection, and to enable him to continue his labors, and, in so doing, occasionally, or at times, drank intoxicating liquors even to the extent of being under the influence thereof, such indulgence could not be termed excessive, and could not be urged as a defense to this action, unless you further find from the evidence that such indulgences were excessive, or that they tended to, or did, shorten his life." This instruction is erroneous. If the jury understood it to mean—and we think they would so understand the language used—that the insured might use intoxicating liquors to any extent that he believed necessary for his own protection, and to enable him to continue his labors, it left it with the insured to determine for himself what would be an excessive use of liquors. The contract was violated if he used intoxicating liquor to excess, and to say, in effect, that he might make such use of liquors as he believed for his own protection is to annul that part of the contract. Moreover, the instruction is contradictory. It tells the jury that if they find the physical condition of the insured was such that he resorted to stimulants, as he believed, for his own protection, and to continue his labors, and at times drank liquors, even to the extent of being under the influence thereof, such indulgence could not be termed excessive, and would not be a defense unless they found such indulg-

ences were excessive, or that they tended to, or did, shorten life; that is, while the court attempts to designate what indulgences would not be excessive, it leaves it with the jury to say whether these same indulgences were excessive. He had said, by a promissory warranty, that he would not use intoxicating liquors to excess, nor practice any pernicious habit that obviously tended to shorten life. If he did either he avoided the policy. The instruction was contradictory, and could have no other tendency than to mislead the jury, or leave them in doubt as to what the law applicable to the case was. See. *McEntire* v. *Brown,* 28 Ind. 347; *Somers* v. *Pumphrey,* 24 Ind. 231; *Summerlot* v. *Hamilton,* 121 Ind. 87; *Union Cent. Life Ins. Co.* v. *Hollowell,* 14 Ind. App. 611; *Kirland* v. *State,* 43 Ind. 146, 13 Am. Rep. 386; *Toledo, etc., R. Co.* v. *Shuckman,* 50 Ind. 42; *Wenning* v. *Teeple,* 144 Ind. 189; *Pittsburgh, etc., R. Co.* v. *Noftsger,* 148 Ind. 101. See, also, *Northwestern, etc., Assn.* v. *Bodurtha,* 23 Ind. App. 121, 77 Am. St. 414.

Judgment reversed, with instructions to sustain appellant's motion for a new trial.