86 So.2d 289

### JEFFERSON LIFE AND CASUALTY COMPANY

v.

**Lillian R. BEVILL.**

8 Div. 708.

Court of Appeals of Alabama.

Dec. 13, 1955.

Rehearing Denied Jan. 10, 1956.

Clark E. Johnson, Jr., Albertville, for appellant.

H. H. Conway, Albertville, for appellee.

HARWOOD, Presiding Judge.

The complaint in this suit as filed originally contained one count claiming damages due under a family group medical and surgical benefit policy.

The demurrers were filed to the original count (Count 1), and the plaintiff amended her complaint by adding Orbie J. Bevill as a party plaintiff, and further amended by filing an additional count, and additional demurrers were filed to the complaint as amended.

The court overruled the demurrers as to count 1, and sustained the demurrers as to the amendment.

The defendant filed pleas of the general issue, and two special pleas to the effect that plaintiff's illness resulted from disease of the generative organs and was within six months of the date of issue of the policy and within an exception and limitation clause contained in the policy removing from the coverage of the policy "diseases of the generative organs unless such conditions or diseases shall originate after this policy has been in force for six months after date of issue." Issue was thus joined.

The trial below was before the court without the intervention of a jury, and after hearing the evidence the court entered a judgment in favor of the plaintiff in the amount of $195.

The defendant thereafter perfected its appeal to this court.

The evidence presented by the plaintiff was directed toward showing that on 21 September 1953 she was issued a policy by the defendant insuring her against loss by reason of certain medical, hospital, and surgical expenses. These expenses are scheduled and limited, but as no question is raised as to the propriety of the amount of damages awarded no need arises to detail them.

In her own behalf the appellee testified that she was 47 years old. On about the 5th of April 1954 she began hemorrhaging, and called Dr. Huckaby. Dr. Huckaby administered some medicine, and on the 13th of April, took her to a hospital where she was operated on three days later.

The appellee stated she had had no difficulty prior to the time she called Dr. Huckaby.

Dr. Huckaby testified that when he saw the appellee she was hemorrhaging from the uterus.

He first thought it was a delayed period and administered for that condition. When he saw her three days later she was no better so he took her to a hospital where she was operated on on 13 April 1954 by Dr. T. E. Martin.

The operation disclosed that the appellee's bleeding was caused by a lipoma, which the doctor described as "a small muscular hardening in the uterus or womb." At the time, "for what reason nobody knows," it had broken down, and was the cause of the hemorrhage.

The Doctor further testified that the condition could have been formed in a few days, or the lipoma may have been present in a dormant condition for a long time. He could not say how long the lipoma may have been present because "you just don't know."

Dr. Huckaby further testified that a person could have a lipoma in the uterus and "be normal until it broke down."

Dr. T. E. Martin testified that he treated the appellee for three days for severe hemorrhaging after she was admitted to the hospital, and then performed a hysterectomy.

The pathologist's report showed a small lipoma on the uterus. A lipoma means the same thing as a fibroid tumor, and is non malignant. The tumor could have been present for as long as five years without any symptoms, and this witness did not think anybody could determine the length of time it may have been present in a dormant state. The appellee's tumor was a small one, and judging by its size, it was Dr. Martin's opinion that the tumor had been there for 40 or 60 days, or longer, lying dormant, and then all at once started growing rapidly and pushed into a blood vessel.

Dr. Martin further testified that if the tumor had been present for 40 or 60 days it was dormant until the bleeding started.

The defense offered in evidence the hospital reports of the Guntersville City Hospital pertaining to appellee's stay and treatment in the hospital. We do not see that these reports furnish any material information additional to the testimony of the medical witnesses.

Counsel for appellant argues two points as constituting error. First, counsel argues that there is no valid count to support the judgment.

It is to be noted that the court specifically overruled the demurrers as to count 1, and sustained the demurrers as to the amendment.

■ Count 1 is in our opinion entirely sufficient and the court properly overruled the demurrer to it.

The cases cited by counsel in support of his contention as to this point are inapt inasmuch as the cases involved situations where the demurrers were sustained to all counts, and the case went on to judgment.

regardless, or the demurrers were overruled as to counts which were palpably defective.

There is no merit in this point

The second point, raised in various ways, relates to the sufficiency of the evidence to support the judgment inasmuch as the evidence, as counsel contends, shows that appellee's claim arose from a disease or condition of the genital organs originating within six months of the date of the issuance of the policy.

A short recapitulation of the evidence shows that the disease or condition of appellee's genital organs first manifested itself on 5 April 1954, more than six months after the issuance of the policy on 21 September 1953; that her condition (hemorrhaging) was caused by a small lipoma having grown into an artery or vein; that lipomas are benign growths, and may lie dormant for years and cause no symptoms unless they, for some unknown reason suddenly begin to enlarge; Dr. Huckaby stated no one could say how long appellee's lipoma may have existed; Dr. Martin testified that due to the small size of the lipoma it was his opinion it had existed for from 40 to 60 days, a period within six months of the issue of the policy, though if it had so existed it had been dormant until the hemorrhaging began.

As stated by Justice Cardozo in Silverstein v. Metropolitan Life Insurance Company, 254 N.Y. 81, 171 N.E. 914, 915:

"A policy of insurance is not accepted with the thought that its coverage is to be restricted to an Apollo or a Hercules.

"A distinction, then, is to be drawn between a morbid or abnormal condition of such quality or degree that in its natural and probable development it may be expected to be a source of mischief, in which event it may fairly be described as a disease or infirmity, and a condition abnormal or unsound when tested by a standard of perfection, yet so remote in its potential mischief that common speech would call it not disease or infirmity, but at most a predisposing tendency."

In connection with meaning of the term "disease," as used in insurance policies, our Supreme Court has stated that "disease" denotes a serious disorder which has impaired the constitution or left in its wake some organic or chronic effect undermining the general health. New York Life Ins. Co. v. Hoffman, 238 Ala. 648, 193 So. 104, and cases cited therein.

Clearly under the evidence the appellee's symptomless and benign abnormality could not be considered a disease until some manifestation thereof exhibited itself. Davidson v. First American Ins. Co., 129 Neb. 184, 261 N.W. 144; Mutual Benefit Health & Accident Ass'n v. Ramage, 293 Ky. 586, 169 S.W.2d 624. This manifestation did not appear until more than six months after the date of the policy.

The lower court was therefore correct in its conclusions, and its judgment is ordered affirmed.

Affirmed.