204 So.2d 828

### OLD SOUTHERN LIFE INSURANCE COMPANY

v.

### Lois N. MOORE.

### 4 Div. 587.

Court of Appeals of Alabama.

April 18, 1967.

Rehearing Denied Nov. 28, 1967.

Gallion, Hare & Anderson, Montgomery, for appellant.

Tipler & Fuller, Andalusia, for appellee.

JOHNSON, Judge.

This is an appeal from a judgment of the Circuit Court of Covington County, Alabama, awarding appellee, Lois N. Moore, $716.00 damages on a health and accident insurance policy. On July 13, 1965, the policy in question was sold by Old Southern Life Insurance Company to appellee, a twenty-eight year old widow, and her minor son. The policy was actually issued to appellee on July 15, 1965, and enumerated certain specific hospital and surgical benefits to appellant and her son, which included hospital room and board, necessary miscellaneous hospital expenses, and doctor's fee while in the hospital. More specifically, the policy stated in part:

"(a) Hospital Room and Board, at the rate of the Daily Room Benefits stated in the hospital Schedule for the number of days of hospital confinement, but not exceeding 120 days as a result of any one sickness or any one accident.

"(b) Necessary Miscellaneous Hospital Expense at an amount each day not to exceed the daily room benefit, incurred by utilization of X-ray, Anesthesia, Laboratory, Operating room, Drugs and Medicine, use of Oxygen, Surgical Dressings, and Ambulance Service. These benefits are specifically limited to a total which shall not exceed ten times the daily room benefit of this policy."

A sixty day waiting period was contained in the policy. This was waived by the Company and the benefits could take immediate effect except for pregnancy of the insured. The daily hospital indemnity as stipulated in the policy was $15.00 per day.

The policy contained the following provision with reference to surgical benefits:

"Payment shall be made for any cutting operation not named above, but otherwise complying with the conditions of this policy, in proportion to benefits provided for comparable operations, the amount to be determined by the Company. No benefits will be paid for dentistry."

There is listed in the policy a procedure for notice by the claimant to the Company of claim. This required written notice within thirty days after the occurrence to the insuror was here complied with by appellee in full.

On August 11, 1965, appellee was hospitalized for two days because of a kidney stone. She was again hospitalized on August 23, 1965, for the same illness, and again on September 16, 1965, at which time she underwent an operation for removal of the kidney stone.

Appellant contends that the possible existence of the kidney stone at the issuance date of the policy was, in effect, an illness of appellee at the time of its issuance, thereby voiding the contract of insurance— even if without Mrs. Moore's knowledge of her possible illness.

Mrs. Moore testified that she had never had any trouble with her kidneys prior to August 11, 1965, and no evidence was introduced to the contrary. The record states the following:

"Q. Was the hospitalization, all three of these that we are talking about, was it for the kidney trouble?

"A. Yes, it was.

"Q. Did that ultimately result in an operation during your last confinement?

"A. Yes, it did.

"Q. To remove a kidney stone?

"A. That's right.

"Q. Now Mrs. Moore, before this policy was issued had you ever had any kidney trouble that you know about?

"A. No, sir.

"Q. I believe the hospital records that will later be introduced shows that you went to Dr. Gunnels the first time about August 11. Did he put you right in the hospital then?

"A. Yes, he did.

"Q. Had you had any trouble prior to going to Dr. Gunnels?

"A. No.

"Q. What was the very first knowledge that you had of any trouble with regard to your kidneys? How long before you went to the doctor was it before you first noticed anything at all pertaining to it or any other symptoms?

"A. It was about a week and four days before I went to see the doctor. I saw blood coming through the kidneys.

"Q. Was that the first symptom or knowledge of any kind that you had any trouble of this nature?

"A. It was.

"Q. Had you had any past history of anything of this type?

"A. No, sir.

*  *  *  *  *  *

"Q. At the time she sold you this policy did she also sell you a rider, or as it is styled here 'Policy Amendment', which said the waiting period for sickness and surgery, except for pregnancy, that may be shown on this policy is hereby waived to as to extend to and cover sickness and/or surgery resulting from sickness which originates after the effective date of this policy?

"A. She did.

"Q. She charged a premium for that?

"A. Yes.

"Q. Now at the time she sold you this policy had you had any trouble about your kidney, any symptoms or anything like that?

"A. No, sir.

"Q. If it was four days to a week before you went in the hospital it would have been early in August?

"A. In August.

"Q. Before you knew anything about it?

"A. That's right.

"Q. Now did the agent, Mrs. Gentry, she asked you, I assume, some questions on this application about past medical history, did she not?

"A. Yes, she did.

*  *  *  *  *  *

"Q. You had never had any kidney treatment or any doctor to diagnose that you had any kind of kidney trouble prior to this going to Dr. Gunnels in August, is that right?

"A. That's right."

Appellee claimed in her original complaint the sum of $561.00 plus interest and costs for her loss as a result of expenses for hospitalization and surgery, and failure of Old Southern Life Insurance Company to pay her claim. After the Company's demurrer and answer appellee amended her complaint and added two additional counts—Count 2, $62.00 plus interest and costs for the hospitalization of August 11–13, 1965; and Count 3, $93.00 plus interest and costs for the hospitalization of August 23–27, 1965. Appellant withdrew his answer and filed his plea. The verdict was for appellee for $716.00.

Appellant lumped for argument Assignments of Error 1–5, 7–9, and 12–17, all of which relate to various aspects of when the kidney disease was chargeable to plaintiff's knowledge.

Appellant's second argument rests on a claimed misrepresentation at inception of the policy.

Appellant introduced as Defendant's Exhibit No. 1, as agreed by the attorneys, the August 11, 1965, hospital report on Mrs.

Moore as prepared by Dr. W. A. Gunnels, the attending physician. This stated in part as follows:

"This 28 year old white female is admitted with a *sudden* episode of severe dysuria." (Emphasis ours.)

In a second report from Dr. James G. Dunn, Jr., the attending physician, it is stated:

"PAST HISTORY: There is no history of serious illnesses or injuries. No previous pain similar to this."

Dr. E. J. Kocour, physician for the Company, stated in a written statement which was read into the record by agreement the following:

" * * * It is my professional *opinion* that if a twenty-eight year old white female had no kidney stone in her right kidney on July 15, 1965, it would not be possible for her to develop such a stone 1.5 cms in size by August 12, 1965. Expressed otherwise, it would be impossible for this kidney stone to have developed to this size in 28 days, *in my opinion.* * * * *" (Emphasis ours.)

The foregoing statement by appellant's doctor was read in court by appellant's counsel under the following stipulation:

"MR. HARE: And we have a stipulation as to what our doctor would testify if he were present, and with the Court's approval we will read that.

"MR. FULLER: If the Court please, let the record show that this is a showing, not a stipulation. We just agreed to have a showing, that's all we have done.

"THE COURT: I might explain to the jury what they are admitting here. The plaintiff does not admit that's true, they just admit that the doctor would say that if he were here. It will be up to you to believe it or not believe it as you see fit."

From that same statement appellant's physician stated what he would have answered in cross-examination as follows:

" * * * Although the medical cause of the kidney condition of the Plaintiff may have had its origin before July 15, 1965, it is quite possible that the condition did not manifest itself to the Plaintiff or become symptomatic or active until sometime after the policy was issued. In fact it is possible that this condition could have existed for sometime without the Plaintiff having any knowledge of it and could have gone on past this time without she or someone else knowing it."

This court, however, in a long series of cases has consistently held this to not be the case. In Jefferson Life & Casualty Co. v. Bevill, 38 Ala.App. 384, 86 So.2d 289, cert. den. 264 Ala. 206, 86 So.2d 292, the court stated:

"Clearly under the evidence the appellee's symptomless and benign abnormality could not be considered a disease *until some manifestation thereof exhibited itself.* Davidson v. First American Ins. Co., 129 Neb. 184, 261 N.W. 144; Mutual Benefit Health & Accident Ass'n. v. Ramage, 293 Ky. 586, 169 S.W.2d 624. * * *" (Emphasis ours.)

This court has further promulgated its opinion in this area of the law in United Security Life Insurance Company v. Hilyer, 41 Ala.App. 226, 128 So.2d 736, cert. den. 272 Ala. 710, 128 So.2d 741, stating:

" * * * in determining when a sickness or disease is contracted and commenced under the terms of insurance policy, the deciding factor ordinarily is *the time that the sickness or disease is manifested,* although the medical cause existed prior to this time." (Emphasis ours.)

And this court stated in Royal Family Insurance Co. v. Grimes, 42 Ala.App. 481, 168 So.2d 262:

"It is a well established rule of law that the 'word "originates," as appears in the exclusionary provision of the policy, refers ordinarily to the time the sick-

ness or disease is manifested, although the medical cause existed prior to this time. * * *'"

■ For the forementioned reasons, it is the opinion of this court that Assignments of Error 4–13 and 15 are without merit, and the unknown ailment of appellee was not such as would permit the Company to avoid its obligation.

Regarding hospitalization and surgery, appellee's brief stated the following:

"The total hospital benefit payable under the policy for the three periods of hospitalization was $473.20. *To this must be added the benefit payable for surgery.* The operation performed on the plaintiff is not among those listed in the schedule of operations in the policy, however, the policy provides that 'payment shall be made for any cutting operation not named above, but otherwise complying with the conditions of this policy, in proportion to benefits provided for comparable operations,' * * * the most that can be claimed is the operation's actual cost which was $200.00. Even if this is added to the hospital benefit, the total benefit is still only $673.20, a figure considerably exceeded by the jury's verdict." (Verdict $716.00—Difference $42.80.)

Assignment of Error 18 reads as follows:

"For that the Court erred in entering judgment for the plaintiff in the excessive amount of, to wit, $716.00."

■ The amount of the judgment is that awarded by the jury. No objection was made to the reception of this verdict by the court and its excessiveness is therefore not before us for review.

We find no cause for reversal of the lower court's judgment. This cause is due to be and the same is hereby

Affirmed.

On Rehearing

JOHNSON, Judge.

Appellant contends in his application for rehearing that the jury verdict and award of damages to appellee was excessive. After a close surveillance of the record, we find that appellant's contentions have some merit.

The three hospital bills of appellee introduced into evidence were $82.40 (August 11–13), Plaintiff's Exhibit No. 2; $107.90 (August 23–27), Plaintiff's Exhibit No. 3; and $514.25 (September 16–October 1), Plaintiff's Exhibit No. 4. The total amount paid by appellee, as reflected by the record, was thus $704.55. Of the above stated amounts, appellee claims only $62.00 of Exhibit No. 2 ($82.40); $93.00 of Exhibit No. 3 ($107.90); but claims $561.00 of Exhibit No. 4 ($514.25) covering the hospital stay and operation. The total amount thus claimed came to the amount of the verdict awarded—$716.00.

The policy states under Part One (b), Hospital Expense Benefit, as follows:

"Necessary Miscellaneous Hospital Expense at an amount each day not to exceed the daily room benefit, incurred by utilization of X-Ray, Anesthesia, Laboratory, Operating Room, Drugs and Medicine, use of Oxygen, Surgical Dressings, and Ambulance Service. These benefits are specifically limited to a total which shall not exceed ten times the daily room benefit of this policy."

This "Daily Hospital Indemnity", as shown in the "Schedule" of the policy, is $15.00.

The policy also enumerates a "Benefit for Doctor's Fee While in Hospital" as Part One (c), in an amount "not to exceed three dollars ($3.00) per day for doctor's visits to the insured" and stating that "benefits will commence with the third day of hospital confinement". The maxi-

mum surgical benefit as admitted by appellant in his memorandum brief, is $200.00.

These figures apply to the bills of appellee as follows:

(1) August 11–13, 1965 (Bill of $82.40)

2 days room and board at $13.00 per day ------------------- $ 26.00
2 days misc. expenses at $15.00 per day ------------------- 30.00
56.00

(Note: No doctor's visit fee paid until the third day.)

(2) August 23–27, 1965 (Bill of $107.90)

3 days room and board at $13.00 per day ------------------- $ 39.00
3 days misc. expenses at $15.00 per day ------------------- 45.00
1 day doctor's fee ---------------------------------------- 3.00
87.00

(3) September 16–October 1, 1965 (Bill of $514.25)

15 days room and board at $13.00 per day ------------------ $195.00
10 days misc. expenses (maximum allowable) $15.00 per day 150.00
Surgical fee ---------------------------------------------- 200.00
545.00

(Note: This figure represents the *maximum* amount allowable for the third period (September 16–October 1, 1965). The "Surgical Expense Provisions" of the policy states as follows: "The company will pay actual expenses incurred for surgical operations . . . *up to* limits of payment . . ." (Emphasis ours.) The total of the operation bill, $514.25, is the maximum amount which may be claimed on Exhibit No. 4. Therefore, appellee's claim of $561.00 is excessive.)

Since the claim in this case is for damages incurred, we must then look to the actual damages suffered as follows:

(A.) Claim for August 11–13 ................ $ 56.00
(B.) Claim for August 23–27 ................. 87.00
(C.) Claim for September 16–October 1 ...... 514.25
TOTAL ........ 657.25

See United Security Life Insurance Co. v. Wisener, 40 Ala.App. 350, 113 So.2d 530.

In the case at bar the verdict awarded was $716.00; the appellee was entitled to only $657.25; and the excess amounts to $58.75.

Payment of interest was asked in this case and we believe it was justly due. Code of Ala., 1940, Tit. 9, Sec. 60, sets this interest at 6%. The case of Whitworth v. Hart, 22 Ala. 343, states in part as follows:

"The interest is but a just compensation for withholding the principal sum; and when the principal sum is ascertained to be due at a particular period, and remains unpaid, without a sufficient excuse for its nonpayment, the interest follows as an incident.—See Godwin et al. v. McGehee, 19 Ala. 468; [Crawford v. Simonton's Ex'rs], 7 Port. 110; [Kirkman v. Vanlier], 7 Ala. [217] 218."

See also Ben Cheeseman Realty Co. v. Thompson, 216 Ala. 9, 112 So. 151.

Thus, appellee was entitled to interest from the date she was able to make her claim, October 1, 1965, until the date the judgment was rendered, May 27, 1966—approximately eight months. Interest for this period would be ⅔ x 6% of $657.25, or $26.96. By a set off of this interest against the amount in excess of that entitled to appellee, the amount in excess is reduced

to $31.79 ($657.25 plus $26.96 = $684.21; $716.00 minus $684.21 = $31.79). However, because interest of 6% also runs on a judgment and verdict from date of rendition until paid (Code of Ala., 1940, Tit. 9, Sec. 63), the remaining $31.79 will be more than offset by at least $61.59 (6% of $684.-21 for eighteen months—May 27, 1966, to date) and the verdict of the jury in this cause is without error by Sup.Ct. of Ala., Rule 45, as the judgment in this cause is due to be affirmed.

Opinion extended.

Application overruled.